## ROACH et al. v. GRANT.

No. 10076.

Court of Civil Appeals of Texas. San Antonio.

June 23, 1937.

Rehearing Denied July 28, 1937.

H. S. Bonham, M. W. Pitts, and J. A. Wood, all of Corpus Christi, for appellants.

John C. North, of Corpus Christi, for appellee.

MURRAY, Justice.

Appellants, N. F. Roach and wife, Eunice Roach, and Cora Ann Roach, a minor, instituted this suit against appellee, John Grant, seeking to recover lots 13 and 14, in block 41, Bluff portion of the city of Corpus Christi, together with the furniture in eight garage apartments located on the lots. At the close of the testimony the trial judge instructed the jury to find for the appellee and against the appellants for the title to lots 13 and 14, in block 41, Bluff portion of the city of Corpus Christi, and then rendered judgment giving appellee title to and possession thereof. The judgment makes no disposition or finding with reference to appellants' suit for the furniture.

This appeal is from that judgment. The evidence shows that prior to August ·18, 1924, appellant, N. F. Roach, and his then wife, Fern Roach, who is now deceased, together with their adopted daughter, Cora Ann Roach, resided in a garage apartment located on lot 1, block 41, Bluff portion of the city of Corpus Christi. On August 18, 1924, Margaret Kelly conveyed to N. F. Roach lots 13 and 14, of said block 41, and retained a vendor's lien note against said lots in the sum of $1,500.

Afterwards Margaret Kelly assigned this note to Lydia Roberts, and on August 15, 1929, N. F. Roach and Lydia Roberts entered into an extension agreement, extending the time of payment of the note to August 15, 1931. Shortly after the purchase of lots 13 and 14 Roach built four apartment houses, or apartment garages, on these lots and moved into one of them. Then, on April 27, 1926, he designated said lots 1, 13, and 14 as his homestead. At the time Roach was engaged in the lumber contracting or automobile business.

Appellee, Grant, was an old friend of Lydia Roberts and advised her to invest. in this $1,500 vendor's lien note; and he felt under obligations to see that her interests were protected.

On September 15, 1931, Smith Bros. Inc., procured a judgment in the sum of $883

and the foreclosure of a paving lien on lots 13 and 14. Just prior to the date of this judgment, Mrs. Fern Roach, who had been served with citation in the case, died, and no suggestion of her death was made prior to the rendition of the judgment. Grant purchased lots 13 and 14 at the sale, under the Smith Bros. judgment, and shortly thereafter, and before he had secured possession of the same, entered into the following contract with Roach:

"State of Texas:

"County of Nueces:

"Memorandum of Agreement, between John Grant, first party, and N. F. Roach, second party, both of the County and State aforesaid, Witnesseth:

"The said John Grant, owner of Lots numbered Thirteen (13) and Fourteen (14), in Block numbered Forty-one on the Bluff portion of the city of Corpus Christi, in said County and State, hereby covenants and agrees to sell and convey said property to the said N. F. Roach, upon and after fulfillment of the terms and conditions set forth below:

"The said N. F. Roach agrees to remove his place of residence from said property, and to abandon the same, on or before the 10th day of April, A.D. 1932, and the same is thereafter to be and remain in the entire and undisputed possession and control of said John Grant, who shall rent and lease the same, collect the rents therefor, pay, when necessary, the utility charges, as water, lights, gas etc.

"The said John Grant shall apply such rents, or other income from said property, first to the payment of himself, of the sum of eight hundred eighty-three ($883.00) Dollars, with interest thereon from March 1, 1932, at the rate of 8% per annum; and when said sum shall have been fully paid, he shall thereafter apply such rents, other income from said property, to the payment of Mrs. Lydia Roberts, of the amount claimed by her on a vendor's lien note formerly held by her against said property for the sum of One Thousand five hundred dollars, with interest thereon as in said note specified; and when both of said amounts, with interest, have been fully paid and satisfied, then the said John Grant shall grant, sell and convey by good and sufficient deed unto the said N. F. Roach, the said property above mentioned, with special warranties only.

"It is further understood and agreed by and between said parties, that, in case suit is filed for the collection of delinquent taxes, or in case said property shall be, or shall be sought to be, subjected to the levy of execution, attachment or other writ, the said John Grant shall have the option, either to pay and satisfy such writ and to add the amount so paid; with costs and necessary expense, to the sums to be paid out of said rents and income, as aforesaid; or to terminate and annul this contract and refuse and deny to be further covered or bound thereby.

"It is finally understood and agreed, that the said John Grant shall be allowed to keep and retain any sums that may be necessarily paid as expense, commission or otherwise, in the collection of said rents and income; and this agreement shall be held in possession of Frank Onzon, attorney, as trustee for both parties.

"Witness our hands this the 26th day of March, A.D. 1932.

"[Signed]    John Grant
"N. F. Roach."

In keeping with this contract, Roach abandoned this property as his home and gave the possession of same to Grant. Grant operated the property for some time, seeking to reimburse himself and Mrs. Roberts for the money they had invested in same, but was unable to do so.

On June 9, 1933, Lydia Roberts filed suit against N. F. Roach and others, seeking to foreclose on the $1,500 vendor's lien note. N. F. Roach and Cora Ann Roach, as well as the other parties, were duly served with citation in this case, but they filed no answer, and judgment was rendered and a foreclosure had. The property was sold on August 1, 1933, and bought in by Lydia Roberts. On August 8, 1933, Lydia Roberts conveyed the property to Grant, for the sum of $1,892.75, which sum was sufficient to pay Lydia Roberts for all that was due her on the note, including attorney's fees and court costs.

At the time Roach moved out of the apartment garage he left furniture belonging to him in the various apartments, with the understanding that Grant might rent the apartments furnished, and in that way derive more revenue from the property.

The first question presented is whether or not the written contract entered into between Grant and Roach, on the 26th day of March, 1932, was supported by a consideration. We are of the opinion that this contract was supported by a valid

consideration. It is true that Grant had purchased the property under the Smith Bros.' foreclosure of the paving lien, and was therefore entitled to possession of the same, but he had not actually secured the possession. Mrs. Fern Roach had died before the judgment was rendered, and Roach could have brought a suit to set the foreclosure aside. He was also asserting certain homestead rights in this property. Whether or not Roach might have ultimately been successful in a suit setting up his contention is unimportant. By reason of the written contract he waived all of these contentions and delivered immediate possession to Grant. He also left his furniture in the apartments and thereby increased the rental value of the apartments. We think that these things constituted a valuable consideration for the written contract.

The next question arising is whether or not Grant had ever exercised the option contained in the contract to cancel the same and refusing to thereafter be bound by it. We conclude that the evidence shows an exercise of such option by Grant. He did not bind himself under this contract to personally pay any debts against the property, he only agreed, in effect, to apply all rents collected from the property, after deducting necessary expenses, to, first, the indebtedness due him, and, second, the indebtedness due Lydia Roberts. The contract further provided that, if suit was filed for the collection of delinquent taxes, or the property subjected or sought to be subjected to the levy of execution, attachment, or other writ, Grant should have the option to either pay and satisfy such writ and add the amount so paid, with costs and necessary expense, to the sums to be paid out of the rents and income, "or to terminate and annul the contract and refuse and deny to be further covered or bound thereby." A suit was filed by Lydia Roberts, and the property was subjected to an order of sale and sold to Mrs. Roberts. The Roaches were parties to this suit, were served with citation, and also had notice of the sale. Grant's failure to pay off this lien and prevent this foreclosure and sale was sufficient notice to the Roaches that he had exercised his option to terminate and annul the contract. The fact that Grant, a few days later, purchased the property from Lydia Roberts, who had bought same at public sale, in nowise changed the situation.

Appellants contend that Grant could not terminate the contract by reason of any levy made to satisfy the Lydia Roberts note, but that it had to be some other indebtedness. We cannot agree with this construction of the contract; he was not bound to pay the Lydia Roberts note, or any other indebtedness against the land, unless the property produced sufficient revenue to do so. An auditor was appointed at the trial, and his report, which seems to be unchallenged by appellants, shows that the property had not produced enough revenue to reimburse Grant the amount due him, and therefore he was under no obligation to pay the Lydia Roberts note.

Appellants also contend that Grant, in purchasing the property from Lydia Roberts, was doing nothing more than was required of him under the contract. We do not agree with this contention. The contract did not bind him, nor did he agree to redeem the land after foreclosure, but it merely gave him the right to pay off the lien in order to avoid a foreclosure on the property. The auditor's report further shows that even at the time of this trial, on April 17, 1936, Grant had not received enough revenue from the property to reimburse himself, and therefore, even under the terms of the contract, appellants could not recover this land from Grant. Before appellants could recover, it would be necessary for them to show that the property had produced enough revenue, after paying expenses, to at least pay the items mentioned in the contract. We are of the opinion that when Grant purchased these lots from Lydia Roberts, after she had foreclosed her first lien on the same and became the purchaser at a public sale, that Grant had good and sufficient title to the lots, unaffected in any way by the contract entered into with Roach.

Appellants complain of the failure of the trial court to at least render judgment in their favor for the possession of the furniture. The record shows that Roach delivered the furniture and personal property to Grant with full authority to use it in connection with renting the garage apartments, and appellants have not alleged at what time they contend the furniture was converted by appellee, nor have they proven the value of the property at any time other than at the time it was delivered to appellee; and the record further shows that at least some of the furniture has been,

from time to time, replaced by other furniture.

· Under such state of the record, the trial court could not have given appellants judgment for the possession of the furniture or the value thereof. Appellants offered no evidence as to the reasonable rental value of the furniture during the time it has been in Grant's possession and, therefore, the court could not have rendered judgment in favor of appellants for the rental value thereof.

We are of the opinion that the judgment rendered by the trial court is correct, and, finding no reversible error in the record, the judgment is accordingly affirmed.